UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CEDRIC LYNCH, | ) | Case No. 1:07CV2742 |
| | ) | |
| Petitioner, | ) | JUDGE SOLOMON OLIVER, Jr. |
| | ) | |
| v. | ) | |
| | ) | |
| JULIUS WILSON, Warden, | ) | Magistrate Judge George J. Limbert |
| | ) | |
| Respondent. | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| | ) | |

On September 11, 2007, Cedric Lynch ("Petitioner"), *pro se*, filed a petition for writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2254. ECF Dkt. #1. Petitioner seeks relief from a judgment of conviction entered by the Lorain County, Ohio Court of Common Pleas for one count of engaging in a pattern of corrupt activity, in violation of O.R.C. § 2923.32(A)(1) (Ohio's Racketeer Influenced and Corrupt Organizations statute, hereinafter "RICO"). *Id.*[1][2] On January 22, 2008, Warden Julius Wilson ("Respondent") filed a return of writ. ECF Dkt. #10.[3] Petitioner did not file a traverse. The case was referred to the undersigned to issue a report and

---

[1]   The first page of the petition states that Petitioner was convicted in the Cuyahoga County Court of Common Pleas for murder on July 6, 2004. ECF Dkt. #1 at 1. This statement appears to be erroneous because Respondent has provided an indictment and a judgment entry, which indicate that Petitioner was convicted of the above-mentioned crimes in the Lorain County Court of Common Pleas on July 6, 2004. ECF Dkt. #10, Ex. 1, 2, 3. Further, the indictment makes no mention of a murder charge. ECF Dkt. #10, Ex. 1.

[2]   Petitioner was also convicted of one count of knowingly obtaining, possessing, or using a controlled substance in violation of Ohio Revised Code ("O.R.C.") § 2925.11(A) and one count of possession of criminal tools, in violation of O.R.C. § 2923.24(A), but his petition does not assert error with those convictions. *See* ECF Dkt. #1; ECF Dkt. #10, Ex. 1, 3. Further, Petitioner was sentenced to one year (concurrent) for each of these charges on June 28, 2004, and he did not file the instant petition until September 11, 2007. Therefore, it appears that Petitioner is not in custody for these offenses.

[3]   The undersigned notes that Respondent's Return of Writ does not have numbered pages. Local Rule 10.1 provides that "Each page [of a pleading] shall be numbered consecutively." Respondent is directed to comply with Local Rule 10.1 in the future.

recommendation.  ECF Dkt. #5.  For the following reasons, the undersigned recommends that the Court DISMISS the instant petition, in its entirety, with prejudice:

## I.      FACTUAL BACKGROUND

The Ninth District Court of Appeals of Ohio set forth the facts of this case on direct appeal. These binding factual findings "shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6 th Cir. 1998), cert. denied, 119 S.Ct. 2403 (1999).  As set forth by the Ninth District Court of Appeals, the facts are:

{¶ 2} On August 21, 2002, Appellant was indicted on numerous counts related to suspected drug activity. Appellant's indictment followed a lengthy investigation by the Narcotics Bureau of the Elyria Police Department. At trial, the State called numerous witnesses, including several different detectives and an analyst from the Bureau of Criminal Investigation and Identification ("BCI"). Numerous recorded phone calls were played, and the State introduced a substantial amount of physical evidence.

{¶ 3} The State's first witness, Detective James Widmer of the Elyria Police Department, testified as follows. He works in the narcotics division and the prosecution of Appellant stemmed from an investigation which focused on Henry Smith, Appellant's cousin. In the early phases of the investigation, a pen register was placed on Mr. Smith's phone in order to track the numbers that he was calling. In turn, the numbers were matched to the owners of the other phones. In addition, a Global Positioning System was placed on Mr. Smith's vehicle to aid in the investigation by tracking his movements. As a result, police were able to maintain surveillance on Mr. Smith at all times. During the course of these phone calls, Mr. Smith on occasion called Appellant. Detective Widmer testified that from his experience and training, the two sometimes used drug slang during their conversations.

{¶ 4} Additionally, the State presented the testimony of Detective Terry Kenneally and Detective James Welsh. Detective Kenneally testified that he observed Appellant stop at a stop light, get out of his vehicle, and take a black bag from the car of John Johnson, a man known to be involved in Mr. Smith's drug business. Next, Detective James Welsh testified that Appellant confessed that the drugs and drug paraphernalia found at his mother's house belonged to him. Appellant also told Detective Welsh that he received approximately an ounce of cocaine from Mr. Smith each month and that Appellant had known for several years that Mr. Smith was a drug dealer. In addition, Detective Welsh testified that tally sheets were recovered that belonged to Appellant and that they indicated debts totaling over $20,000 from numerous individuals.

{¶ 5} Additionally, over defense objection, the State solicited the testimony of R. Michael Velten, a lab director for BCI. Mr. Velten testified that the substances found at the residence of Appellant's mother were controlled substances, including marijuana and cocaine. He went on to testify as to the amount of each substance that was recovered from the residence.

{¶ 6} In turn, Appellant put on witnesses which contradicted the surveillance reports given by the detectives. Two of these witnesses testified that Appellant could not have been where police surveillance placed him on June 18, 2002, because he was with

them at a basketball game. Another defense witness, an auto mechanic, testified that Appellant's vehicle could not have been at Red Lobster on June 15, 2002, as the police testified, because he was working on Appellant's vehicle that day. Finally, Appellant testified on his own behalf. He reiterated that he was not involved in any of Mr. Smith's drug activities. Further, he recanted his confession, stating that he lied in order to get his mother and brother out of jail. He went on to explain that the tally sheets all referenced personal debts for monies he had loaned to family and friends.

{¶ 7} At the trial's conclusion, Appellant was found guilty of one count of possession of cocaine, one count of possession of criminal tools, and one count of engaging in a pattern of corrupt activity. As a result, he was sentenced to seven years incarceration.

ECF Dkt. #10, Ex. 8 at 1-4; *State v. Lynch*, Case No. 04CA008531, 2005 WL 1163024 at *1-*2

(Ohio App. 9 Dist. May 18, 2005), unreported.

## II. PROCEDURAL BACKGROUND

### A. State Trial Court

On August 21, 2002, the Lorain County, Ohio Grand Jury returned an indictment against

Petitioner charging eleven counts, paraphrased below:

| | |
|---|---|
| Count 1 | possession of a controlled substance, to wit: cocaine that was not crack cocaine in an amount exceeding 25 grams but not exceeding 100 grams or crack cocaine in an amount exceeding 5 grams but not exceeding 10 grams on or about July 23, 2002, in violation of O.R.C. § 2925.11(A); |
| Count 2 | possession of a controlled substance, to wit cocaine, on or about July 23, 2002, in violation of O.R.C. § 2925.11(A); |
| Count 3 | possession of criminal tools, to wit money with the purpose to use it criminally in the commission of a felony, on or about July 23, 2002, in violation of O.R.C. § 2923.24(A); |
| Count 4 | selling a controlled substance, to wit cocaine that was not crack cocaine in an amount exceeding 1,000 grams or crack cocaine in an amount exceeding 100 grams on or about June 15, 2002, in violation of O.R.C. § 2925.03(A), with a major drug offender specification pursuant to O.R.C. § 2929.01; |
| Count 5 | selling a controlled substance, to wit cocaine that was not crack cocaine in an amount exceeding 1,000 grams or crack cocaine in an amount exceeding 100 grams on or about July 1, 2002, in violation of O.R.C. 2925.03(A), with a major drug offender specification pursuant to O.R.C. § 2929.01; |
| Count 6 | selling a controlled substance, to wit cocaine that was not crack cocaine in an amount exceeding 1,000 grams or crack cocaine in an amount exceeding 100 grams on or about July 23, 2002, in violation of O.R.C. 2925.03(A), with a major drug offender specification pursuant to O.R.C. § 2929.01; |
| Count 7 | possession of a controlled substance, to wit cocaine that was not crack |

cocaine in an amount exceeding 1,000 grams or crack cocaine in an amount exceeding 100 grams on or about June 15, 2002, in violation of O.R.C. 2925.11(A), with a major drug offender specification pursuant to O.R.C. § 2929.01;

Count 8      possession of a controlled substance, to wit cocaine that was not crack cocaine in an amount exceeding 1,000 grams or crack cocaine in an amount exceeding 100 grams on or about July 1, 2002, in violation of O.R.C. 2925.11(A), with a major drug offender specification pursuant to O.R.C. § 2929.01;

Count 9      possession of a controlled substance, to wit cocaine that was not crack cocaine in an amount exceeding 1,000 grams or crack cocaine in an amount exceeding 100 grams on or about July 23, 2002, in violation of O.R.C. 2925.11(A), with a major drug offender specification pursuant to O.R.C. § 2929.01;

Count 10     possession of criminal tools, to wit cash with the purpose to use it criminally in the commission of a felony, on or about July 23, 2002, in violation of O.R.C. § 2923.24(A); and

Count 11     being employed by or associated with an enterprise and conducting or participating with the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt, from June 1, 2002 through July 25, 2002, in violation of O.R.C. § 2923.32(A)(1).  The indictment specified that the pattern of corrupt activity includes but is not limited to the Trafficking in Drugs and Possession of Drug Offenses contained in the indictment.

ECF Dkt. # 10, Ex. 1.  On June 11, 2004, the state filed a motion to amend the indictment, replacing the specific dates in Counts 4-9 with the date range of "June 13, 2002 through July 23, 2002."  ECF Dkt. #17, Attach. 1.

On June 14, 2004, Petitioner executed a waiver of his right to trial by jury.  ECF Dkt. #10, Ex. 2.  On June 28, 2004, the case proceeded to a bench trial where the judge granted the state's motion to amend the indictment.  ECF Dkt. # 15 at 9-10.  After the court granted the motion to amend the indictment, the state moved to dismiss Counts 5, 6, 8, and 9.  After hearing the case, the trial judge found Petitioner guilty of Counts 1, 3, and 11, but acquitted him on Counts 2, 4, 7, and 10.  ECF Dkt. #10, Ex. 3; ECF Dkt. #16 at 362.

The trial judge sentenced Petitioner to 1 year of imprisonment for each of Counts 1 and 3 and 7 years of imprisonment for Count 11, with all sentences to run concurrently.  ECF Dkt. #10, Ex. 4.

**B.      Direct Appeal – Ohio Court of Appeals**

On July 23, 2004, Petitioner filed a notice of appeal from his conviction.  ECF Dkt. #10, Ex.

-4-

5.  On October 26, 2004, Petitioner filed a supporting brief raising the following assignments of error:

    I.      APPELLANT'S CONVICTION FOR ENGAGING IN A PATTERN OF CORRUPT ACTIVITY UNDER COUNT ELEVEN OF THE INDICTMENT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

    II.     THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION TO SUPPRESS EVIDENCE.

    III.    THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION IN LIMINE WITH RESPECT TO THE ADMISSION OF ANY SUBSTANCE PURPORTED TO BE COCAINE IN THIS MATTER AND DEPRIVED THE APPELLANT OF DUE PROCESS OF LAW BECAUSE THE STATE OF OHIO FAILED TO PROPERLY FILE AND PRODUCE A LABORATORY REPORT FOR REVIEW BY THE DEFENDANT WITHIN A REASONABLE TIME PRIOR TO TRIAL.

ECF Dkt. #10, Ex. 6.  On May 20, 2005, the Ohio Court of Appeals for the Ninth District affirmed Petitioner's conviction.  ECF Dkt. #10, Ex. 8.

### C.    Direct Appeal – Supreme Court of Ohio

On July 5, 2005, Petitioner filed a notice of appeal from the Ninth District Court of Appeals' judgment affirming his conviction.  ECF Dkt. #10, Ex. 9.  In his contemporaneously filed memorandum in support of jurisdiction, Petitioner asserted the following proposition of law:

    I.      A trial court commits reversible error when it admits a lab report into evidence after the State failed to serve a copy of that report to the defendant prior to trial, in violation of R.C. 2925.51(B).

ECF Dkt. #10, Ex. 10.  On October 12, 2005, the Supreme Court of Ohio denied jurisdiction in an unexplained opinion.  ECF Dkt. #10, Ex. 12.

### D.    Applications to Re-open Direct Appeal

On August 18, 2005, Petitioner filed an application to re-open his direct appeal pursuant to Ohio Rule of Appellate Procedure 26(B) and *State v. Murnahan*, 63 Ohio St. 3d 60 (Ohio 1992).  ECF Dkt. #10, Ex. 13.  Petitioner argued that his appeal should have been re-opened as a result of ineffective assistance of appellate counsel for failing to raise a claim pursuant to *Blakely v. Washington*, 124 S.Ct. 2531 (2004).  ECF Dkt. #10, Ex. 13 at 4-7.  On August 26, 2005, the Ohio Court of Appeals denied the application because it had not been filed within 90 days of the journalization of the appellate court's judgment.  ECF Dkt. #10, Ex. 14.

On November 10, 2005, Petitioner filed an application for reconsideration pursuant to Ohio Rule of Appellate Procedure 26(A).  ECF Dkt. #10, Ex. 15.  Petitioner claimed that the Ohio Court of Appeals incorrectly denied his Rule 26(B) application as untimely.  *Id*. at 3.  Petitioner also contended that his attorney did not receive a copy of the journal entry denying his application to re-open his appeal.  *Id*. at 3-4.  On November 28, 2005, the Ohio Court of Appeals denied Plaintiff's application.  ECF Dkt. #10, Ex. 17.

**E.      Motion to Vacate Void Forfeiture Judgment**

On April 12, 2006, Petitioner filed a motion captioned "Motion to Vacate Void Forfeiture Jdgment [sic]" in the Lorain County Court of Common Pleas.  ECF Dkt. #10, Ex. 18.  Petitioner raised the following argument:

> I.      THE COURT [sic] JULY 6TH 2004 FORFEITURE JUDGMENT/ORDER IN THIS CASE IS VOID AS A MATTER OF LAW WHERE THE COURT ORDERED THE FORFEITURE WITHOUT FOLLOWING THE PROVISIONS OF R.C. §2923.32(B).

ECF Dkt. #10, Ex. 18 at 6.  On April 27, 2006, the court denied Petitioner's motion.  ECF Dkt. #10, Ex. 19.

On May 23, 2006, Petitioner filed a notice of appeal to the Ninth District Court of Appeals from the trial court's denial of his Motion to Vacate Void Forfeiture Judgment.  ECF Dkt. #10, Ex. 20.  On June 19, 2006, Petitioner filed an appellate brief setting forth the following assignment of error:

> I.      THE TRIAL COURT COMMITTED CLEAR REVERSIBLE ERROR, ACTED OUTSIDE ITS JURISDICTION, WITHOUT JURISDICTION, AND CONTRARY TO LAW, IN CONVICTING AND SENTENCING DEFENDANT ON A CHARGE OF "ENGAGING IN A PATTERN OF CORRUPT ACTIVITY," WHERE, AS A MATTER OF LAW, THERE WAS ONLY ONE "PREDICATE OFFENSE" TO SUPPORT THE "ENGAGING IN A PATTERN OF CORRUPT ACTIVITY" CHARGE; THE SENTENCE IS VOID.

ECF Dkt. #10, Ex. 21.  On November 6, 2006, the Ohio Court of Appeals denied the appeal.  ECF Dkt. #10, Ex. 23.

On December 8, 2006, Petitioner filed a notice of appeal to the Supreme Court of Ohio and a memorandum in support of jurisdiction.  ECF Dkt. #10, Ex. 24, 25.  Petitioner raised the following

propositions of law:

### FIRST PROPOSITION OF LAW

A DEFENDANT IS DENIED HIS FEDERAL CONSTITUTIONAL RIGHT TO DUE PROCESS OF LAW WHEN AN APPEAL COURT DOES NOT ADDRESS A JURISDICTIONAL CLAIM AND BARS THE CLAIM UNDER THE DOCTRINE OF RES-JUDICATA.

### SECOND PROPOSITION OF LAW

THE APPEALS COURT ERRS WHEN IT TREATS A JURISDICTIONAL CLAIM AS A PETITION FOR POSTCONVITION [sic] RELIEF AND DOES NOT REVERSE AN UNCONSTITUTIONALLY IMPOSED SENTENCE UNDER THE PROVISIONS OF O.R.C. 2929.14.

ECF Dkt. #10, Ex. 25.  On February 28, 2007, the Supreme Court of Ohio denied leave for the appeal.  ECF Dkt. #11, Ex. 27.

### F.     State Habeas Corpus Petition

On December 28, 2006, Petitioner filed a state habeas corpus petition in the Fifth District Court of Appeals of Ohio.  ECF Dkt. #11, Ex. 28.  Petitioner raised the following claim:

1.     THE TRIAL COURT PATENTLY AND UNAMBIGUOUSLY LACKED JURISDICTION TO CONVICTION [sic] AND SENTENCE PETITIONER ON THE CHARGE OF "ENGAGING IN A PATTERN OF CORRUPT ACTIVITY," WHERE, AS A MATTER OF LAW, THERE WAS ONLY ONE "PREDICATE OFFENSES" [sic] TO SUPPORT THE "ENGAGING IN A PATTERN OF CORRUPT ACTIVITY" CHARGE.

ECF Dkt. #11, Ex. 28 at 4.

On January 18, 2007, the Ohio Court of Appeals dismissed the petition sua sponte, finding that:

the Lorain County Court of Common Pleas had jurisdiction to preside over the felony offenses and therefore jurisdiction to impose a sentence upon conviction. Furthermore, [Petitioner] had an adequate remedy at law to challenge the conviction and sentence by way of appeal. Accordingly, we find no basis for granting a writ of habeas corpus and [Petitioner's] petition is hereby sua sponte denied.

ECF Dkt. #11, Ex. 29 at 2-3.  On March 15, 2007, Petitioner filed a notice of appeal to the Supreme Court of Ohio.  ECF Dkt. #11, Ex. 30.  On July 11, 2007, the Supreme Court of Ohio affirmed the Ohio Court of Appeals' decision.  ECF Dkt. #11, Ex. 32.

### G.     Federal Habeas Corpus Petition

On September 11, 2007, Petitioner filed the instant petition seeking relief from his state court

conviction.  ECF Dkt. #1; *see Towns v. U.S.*, 190 F.3d 468, 469 (6th Cir. 1999) citing *Houston v. Lack*, 487 U.S. 266, 270-74 (1988) (a *pro se* prisoner's petition is considered to be filed on the day he delivers it to prison authorities).  Petitioner presents the following ground for relief:

> **Ground One:**
>
> > DENIAL OF DUE PROCESS OF LAW FOR LACK OF TRIAL COURT JURISDICTION
>
> **Supporting Facts:**
>
> > PETITIONER'S RIGHT TO DUE PROCESS OF LAW UNDER THE FOURTEENTH AMENDMENT AS GUARANTEED BY THE UNITED STATES CONSTITUTION WAS VIOLATED WHERE THE TRIAL COURT PATENTLY AND UNAMBIGUOUSLY LACKED JURISDICTION TO CONVICT AND SENTENCE PETITIONER ON THE CHARGE OF 'ENGAGING IN A PATTERN OF CORRUPT ACTIVITY,' WHERE, AS A MATTER OF LAW, THERE WAS ONLY ONE "PREDICATE OFFENSE" TO SUPPORT THE "ENGAGING IN A PATTERN OF CORRUPT ACTIVITY" CHARGE.

*Id*.  On January 22, 2008, Respondent filed a return of writ.  ECF Dkt. #10.  Petitioner did not file a traverse.

### III.    PROCEDURAL BARRIERS TO REVIEW

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a writ of federal habeas corpus.  As Justice O'Connor noted in *Daniels v. United States*, "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993).

Respondent contends that the instant case is time-barred and procedurally defaulted.  ECF Dkt. #10 at 9.

### A.    Statute of Limitations

In general, a state prisoner seeking habeas corpus relief pursuant to 28 U.S.C. § 2254 must comply with the statute of limitations period set forth in 28 U.S.C. § 2244, which provides:

> (d)(1)    A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> > (A) the date on which the judgment became final by the conclusion of direct

> review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (d)(2)   The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

The statute of limitations is tolled for any period of time in which a properly filed petition for post-conviction relief is pending before the state courts. *Jurado v. Burt*, 337 F.3d 638, 640 (6th Cir. 2003); see 28 U.S.C. § 2244(d)(2).  To determine if a state proceeding will toll the statute of limitations, the Sixth Circuit has held that:

> A state petition for post-conviction or other collateral review that does not address one or more of the grounds of the federal habeas petition in question is not a review 'with respect to the pertinent judgment or claim' within the meaning of 28 U.S.C. § 2244(d)(2), and therefore does not toll the one-year AEDPA statute of limitations.

*Austin v. Mitchell*, 200 F.3d 391, 395 (6th Cir. 1999).  Further, the "tolling provision does not ... 'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run.  Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations."  *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003) (quoting *Rashid v. Khulmann*, 991 F. Supp. 254, 259 (S.D.N.Y. 1998)).

The one-year statute of limitations under Section 2244 is subject to equitable tolling when a petitioner's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond the petitioner's control.  *Dunlap v. United States*, 250 F.3d 1001, 1004 (6th Cir. 2001); *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560-61 (6th Cir. 2000). The Sixth Circuit has stated that "federal courts sparingly bestow equitable tolling." *Graham-Humphreys*, 209 F.3d at 560-61; *Jurado*, 337 F.3d at 642.  When determining whether equitable tolling is appropriate, the court must consider: "(1) the petitioner's lack of notice of the

-9-

filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim." *Dunlap*, 250 F.3d at 1008; *Miller v. Collins*, 305 F.3d 491, 495 (6th Cir. 2002). These factors are not comprehensive and not all of the factors are relevant in all cases. *Cook*, 295 F.3d at 521. Whether equitable tolling is appropriate is a case-by-case analysis. *Id*. The petitioner bears the ultimate burden of persuading the court that he or she is entitled to equitable tolling. *Vroman*, 346 F.3d at 605.

### B.    Exhaustion of State Remedies

As a general rule, a state prisoner must exhaust all possible state remedies or have no remaining state remedies before a federal court will review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004). The exhaustion requirement is satisfied  "once the federal claim has been fairly presented to the state courts." *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987). To exhaust a claim, a petitioner must present it "to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *see also McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). General allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present" claims that specific constitutional rights were violated. *McMeans*, 228 F.3d at 681 citing *Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2nd Cir. 1984).

In order to have fairly presented the substance of each of his federal constitutional claims to the state courts, the petitioner must have given the highest court in the state in which he was convicted a full and fair opportunity to rule on his claims. *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). A petitioner fairly presents the substance of his federal constitutional claim to the state courts by: (1) relying upon federal cases that use a constitutional analysis; (2) relying upon state cases using a federal constitutional analysis; (3) phrasing his claim in terms of constitutional law or in terms sufficiently particular to allege the denial of a specific constitutional right; or (4) alleging facts that are obviously within the mainstream of constitutional law. *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004), quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003); *see*

*also Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir.) cert. denied, 509 U.S. 907 (1993)(quotation omitted).      Unless an exception applies, the Court must dismiss a petition for lack of exhaustion if it contains at least one issue that was not presented to the state courts so long as a remedy is still available for the petitioner to pursue in the state courts. *Rose v. Lundy*, 455 U.S. 509, 518-20 (1982). The Supreme Court has held that "the petitioner has the burden . . . of showing that other available remedies have been exhausted or that circumstances of peculiar urgency exist." *Darr v. Burford*, 339 U.S. 200, 218-19 (1950), *overruled in part on other grounds*, *Fay v. Noia*, 372 U.S. 391 (1963). A petitioner will not be allowed to present claims never before presented in the state courts unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal, or that he is actually innocent of the crime for which he was convicted. *Coleman v. Thompson*, 501 U.S. 722, 748 (1991).

### C.      Procedural Default

The procedural default doctrine serves to bar review of federal claims that a state court has declined to address when a petitioner does not comply with a state procedural requirement. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). In these cases, "the state judgment rests on independent and adequate state procedural grounds." *Coleman,* 501 U.S. at 730. For purposes of procedural default, the state ruling with which the federal court is concerned is the "last explained state court judgment." *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004) citing *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis removed). When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits of a habeas petition. *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir. 1991). In determining whether a state court has addressed the merits of a petitioner's claim, federal courts must rely upon the presumption that there is no independent and adequate state grounds for a state court decision absent a clear statement to the contrary. *Coleman*, 501 U.S. at 735.

Applying this presumption, the Sixth Circuit Court of Appeals established a four-pronged analysis to determine whether a claim has been procedurally defaulted. *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986). Under the *Maupin* test, a reviewing court must decide:

(1)    whether the petitioner failed to comply with an applicable state procedural rule;

(2)    whether the state courts actually enforced the state procedural sanction;

(3)    whether the state procedural bar is an "adequate and independent" state ground on which the state can foreclose federal review; and

(4)    if the above are met, whether the petitioner has demonstrated "cause" and "prejudice."

*Id.* at 138.

Under the first prong of *Maupin*, there must be a firmly established state procedural rule applicable to the petitioner's claim and the petitioner must not have complied with the rule. *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (state procedural bar that is not "firmly established and regularly followed" cannot serve to bar federal judicial review); *Franklin v. Anderson*, 434 F.3d 412, 418 (6th Cir. 2006). The question of whether a state procedural rule was "firmly established and regularly followed" is determined as of the time at which it was to be applied. *Richey v. Mitchell*, 395 F.3d 660, 680 (6th Cir. 2005).

Under the second prong, the last state court to which the petitioner sought review must have invoked the procedural rule as a basis for its decision to reject review of the prisoner's federal claims. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991) (appeal dismissed for lack of jurisdiction); *Richey*, 395 F.3d at 678 ("a lapsed claim survives if the state court overlooked the default and decided the claim anyway"); *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004) (if a state court does not expressly rely on a procedural deficiency, then a federal court may conduct habeas review); *Gall v. Parker*, 231 F.3d 265, 310 (6th Cir. 2000) (even if issue is not raised below, where state supreme court clearly addresses the claim, no procedural bar arises); *Boyle v. Million*, 201 F.3d 711, 716-17 (6th Cir. 2000) (where a state appellate court characterizes its earlier decision as substantive, the earlier decision did not rely on a procedural bar; therefore, the cause and prejudice test does not apply).

Under the third prong, a state judgment invoking the procedural bar must rest on a state law ground that is both independent of the merits of the federal claim and is an adequate basis for the state court's decision. *Munson v. Kapture*, 384 F.3d 310, 313-14 (6th Cir. 2004). A state's *res*

-12-

*judicata* rule barring post-conviction claims which could have been raised on appeal is an adequate and independent ground for *Maupin* purposes.  *White v. Mitchell*, 431 F.3d 517, 527 (6th Cir. 2005); *Mason v. Mitchell*, 320 F.3d 604, 628 (6th Cir. 2003).

Under the fourth prong, a claim that is procedurally defaulted in state court will not be reviewable in federal habeas corpus unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice.  *Coleman*, 501 U.S. at 751.  "Cause" is a legitimate excuse for the default, and "prejudice" is actual harm resulting from the alleged constitutional violation.  *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984), *cert. denied*, 490 U.S. 1068 (1985).  If a petitioner fails to show cause for his procedural default, the reviewing court need not address the issue of prejudice.  *Smith v. Murray*, 477 U.S. 527 (1986).

Simply stated, a federal court may review federal claims:

> that were evaluated on the merits by a state court. Claims that were not so evaluated, either because they were never presented to the state courts (i.e., exhausted) or because they were not properly presented to the state courts (i.e., were procedurally defaulted), are generally not cognizable on federal habeas review.

*Bonnell v. Mitchel,* 301 F.Supp.2d 698, 722 (N.D. Ohio 2004).  The above standards apply to the Court's review of Petitioner's claims.

## IV.    STANDARD OF REVIEW

If Petitioner's claims overcome the procedural barriers of time limitation, exhaustion and procedural default, AEDPA governs this Court's review of the instant case because Petitioner filed his petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 on February 7, 2007, well after the act's effective date of April 26, 1996.  *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998).  Under Section 2254, a state prisoner is entitled to relief if he is held in custody in violation of the United States Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(d).

The AEDPA sets forth the standard of review for the merits of a petition for the writ of habeas corpus.  The AEDPA provides:

(d)     An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --

    (1)     resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or

    (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added).  In *Williams v. Taylor*, the Supreme Court clarified the language of 28 U.S.C. § 2254(d) and stated:

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Furthermore, the Supreme Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*; *see also Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001).

The Sixth Circuit Court of Appeals offers the following guidelines for applying the AEDPA limitations:

A.     Decisions of lower federal courts may not be considered.

B.     Only the holdings of the Supreme Court, rather than its dicta, may be considered.

C.     The state court decision may be overturned only if:

-14-

1.      It '[applies] a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases,' (the Supreme Court precedent must exist at the time of petitioner's direct appeal) or;

2.      the state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent;' or

3.      'the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;' or

4.      the state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'

D.      Throughout this analysis the federal court may not merely apply its own views of what the law should be. Rather, to be overturned, a state court's application of Supreme Court of the United States precedent must also be objectively unreasonable.  That is to say, that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'  'An unreasonable application of federal law is different from an incorrect or erroneous application of federal law.'

E.      Findings of fact of the state courts are presumed to be correct. 'The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'

*Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001) (internal citations omitted).

Finally, a reviewing federal court is bound by the presumption of correctness, under which the federal court is obligated to "accept a state court's interpretation of the state's statutes and rules of practice."  *Hutchinson v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985); *see also Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986).  The presumption of correctness is set forth in 28 U.S.C. § 2254(e), which provides:

(e)(1)In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e). The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact. *Levine v. Torvik*, 986 F.2d 1506, 1514 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993). The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997). Furthermore, a reviewing federal court is not free to ignore the pronouncement of a state appellate court on matters of law. *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676, n.4 (6th Cir. 2000). Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## V.     ANALYSIS

The undersigned recommends that the Court find that the instant case is not time-barred but it is procedurally defaulted for the following reasons:

### A.     AEDPA STATUTE OF LIMITATIONS

Turning first to the statute of limitations calculation, the undersigned notes that Petitioner's conviction became final on January 10, 2006 because the Supreme Court of Ohio denied leave to appeal on October 12, 2005 and Petitioner had 90 days in which to seek certiorari from the United States Supreme Court. Therefore, the AEDPA statute of limitations began running the next day, on January 11, 2006, unless it was otherwise tolled.

The first post-conviction motion the Court must consider is Petitioner's November 10, 2005 Rule 26(A) motion to reopen his appeal. Respondent acknowledges that this motion tolled the AEDPA statute of limitations. ECF Dkt. #10 at 9.[4] Respondent goes on to contend that the AEDPA statute of limitations was tolled until Petitioner's 45 day period for seeking review expired, that is, until January 12, 2006. *Id.* Respondent's contention is incorrect. The reopening of an appeal under

---

[4]     Respondent, however, appears to have mistakenly referred to Petitioner's Rule 26(B) motion. The undersigned surmises that this reference is a typographical error, as Respondent indicated that Petitioner's Rule 26(B) motion was denied on November 28, 2005, when that motion was in fact denied on August 26, 2005 (ECF Dkt. #10, Ex. 14). It was the Rule 26(A) motion that was denied on November 28, 2005 (ECF Dkt. #10, Ex. 17).

-16-

Ohio R. App. P. 26(B) based upon a claim of ineffective assistance of counsel is a collateral proceeding and not part of the direct appeal process. *Lopez v. Wilson*, 426 F.3d 339, 351-52 (6th Cir. 2005) (en banc) ; see also *Morgan v. Eads*, 818 N.E.2d 1157, 1162 & syllabus ¶ 26 (Ohio 2004). Since Petitioner's 26(A) motion sought reconsideration of the appellate court's denial of his 26(B) motion, it follows that Petitioner's 26(A) motion was also a collateral appeal.   As such, it tolls the one year statute of limitations under § 2244(d)(1)(A) for as long as the application is pending before the Ohio courts, and not during the time in which Petitioner could have sought review. *See Lawrence v. Florida*, 127 S. Ct. 1079, 1083 (2007) *abrogating Abela v. Martin*, 348 F.3d 164, 172-73 (6th Cir. 2003) (en banc).  Therefore, the AEDPA statute of limitations was tolled in this case only until the Ohio Court of Appeals denied Petitioner's 26(A) motion on November 28, 2005.

Having determined that the AEDPA statute of limitations was not tolled and began running on January 11, 2006, the undersigned will go on to determine whether any of Petitioner's other post-conviction petitions tolled the AEDPA statute of limitations.  Respondent asserts that none of these actions were "properly filed" and therefore did not toll the AEDPA statute of limitations.  ECF Dkt. #10 at 10.

Respondent first contends that Petitioner's Motion to Vacate Void Forfeiture Judgment, which the appellate court construed as a post-conviction petition,[5] was not properly filed because it was barred by the doctrine of res judicata.  ECF Dkt. #10 at 10.  Respondent reasons that Petitioner raised arguments in the post-conviction petition that he could have raised during direct appeal.  *Id*. Respondent further notes that the petition was untimely.  *Id*.  Since the latter argument is dispositive of the issue, the undersigned will address the untimely filing of the motion.

Where a post-conviction relief petition is untimely filed under state law, it does not toll the statute of limitations, despite any exceptions to the timely filing requirement that might exist under

---

[5]     The Ohio Court of Appeals relied on *State v. Reynolds*, 679 N.E.2d 1131 (Ohio 1997), where the Supreme Court of Ohio stated, "Where a criminal defendant, subsequent to his or her direct appeal, files a motion seeking vacation or correction of his or her sentence on the basis that his or her constitutional rights have been violated, such a motion is a petition for post-conviction relief as defined in R.C. 2953.21."

-17-

the state law. *Pace v. DiGuglielmo*, 544 U.S. 408, 413-14 (2005). As the Court of Appeals noted in this case, O.R.C. § 2953.21(A)(2) requires a petitioner to file a petition for post-conviction relief within 180 days of the date on which his transcript was filed with the Court of Appeals on direct appeal. ECF Dkt. #10, Ex. 23 at 4; O.R.C. § 2953.21(A)(2). The court noted that Petitioner's transcript was filed on September 1, 2004, but he did not file the petition for post-conviction relief until May 23, 2006, nearly two years later. ECF Dkt. #10, Ex. 23 at 4.[6] It appears that Petitioner does not deny that his petition for post-conviction relief was untimely. *See* ECF Dkt. #1. Accordingly, the undersigned recommends that the Court find Petitioner's Motion to Vacate Void Forfeiture Judgment to be untimely, and hence not properly filed. Therefore, the undersigned recommends that the Court find that Petitioner's Motion to Vacate Void Forfeiture Judgment did not toll the AEDPA statute of limitations.

While Respondent accurately contends that Petitioner's Motion to Vacate Void Forfeiture Judgment was not properly filed, Respondent's argument fails to address any potential tolling effect of the appeal Petitioner filed from the trial court's denial of that motion on May 23, 2006. Respondent simply contends, "Since **the petition** was found by the state court to be untimely, it was not properly filed and did not toll the statute of limitations," without addressing any tolling effect from the appeal arising from that petition. ECF Dkt. #10 at 10 (emphasis added). Respondent has failed to identify any precedent for the proposition that a timely appeal from an improperly filed post-conviction action does not toll the AEDPA statute of limitations. In fact, Respondent has not even stated its position as to whether the appeals from Petitioner's Motion to Vacate Void Forfeiture Judgment were timely or untimely. It is Respondent's burden to do so. *See Scott v. Collins*, 286 F.3d 923, 927 (6th Cir. 2002) (The AEDPA statute of limitations is not jurisdictional; instead, it is an affirmative defense.); *Griffin v. Rogers,* 308 F.3d 647, 653 (6th Cir. 2002) (The party asserting the statute as a defense has the burden of demonstrating that the statute has run.). Accordingly, the undersigned recommends that the Court find that these appeals tolled the AEDPA statute of

---

[6] Petitioner actually filed his motion in the trial Court on April 12, 2006. ECF Dkt. #10, Ex. 18. Regardless, his filing was still beyond the 180 day period and consequently untimely.

limitations from May 23, 2006 (when Petitioner filed a notice of appeal with the Ohio Court of Appeals) until February 28, 2007 (when the Supreme Court of Ohio denied the appeal).[7]  The AEDPA statute of limitations would therefore resume running the next day on March 1, 2007, absent tolling.

On December 28, 2006, while his appeals from his Motion to Vacate Void Forfeiture Judgment were pending, Petitioner filed a state petition for a writ of habeas corpus.  ECF Dkt. #11, Ex. 28.   Respondent contends that this petition was not properly filed because:

> In Ohio, habeas corpus is an extraordinary remedy and is not available if the petitioner had other adequate legal remedies.  In the criminal context, it is an available remedy only in those rare instances in which the trial court had no subject matter jurisdiction. It is not a forum for collateral review of errors that occurred during the course of a criminal conviction.  Instead, appeal and/or post conviction are the proper remedies. *Bellman v. Jago*, 38 Ohio St.3d 55 ([Ohio] 1988).

ECF Dkt. #10 at 11.  Respondent goes on to argue that Petitioner's habeas petition was based upon an insufficiency of evidence argument, not a jurisdictional claim.  *Id*.  Respondent therefore concludes that Petitioner was not entitled to tolling based upon his state habeas petition.  *Id*. citing *Adeline v. Stinson*, 206 F.3d 249 (2d Cir. 2000).

Respondent fails to cite any authority for the proposition that Ohio habeas review is available only for subject-matter jurisdiction claims.  Respondent cites only *Bellman*, which merely states that "Habeas corpus is not and never was a post-conviction remedy for the review of errors or irregularities of an accused's conviction or for a retrial of the guilt or innocence of an accused." *Bellman* 38 Ohio St. 3d at 56 (internal quotations omitted).  Respondent has cited no authority affirmatively defining the scope of Ohio habeas review.  Regardless, the undersigned is aware that Ohio provides for habeas review through O.R.C. § 2725.01, which provides:

> Whoever is unlawfully restrained of his liberty, or entitled to the custody of another, of which custody such person is unlawfully deprived, may prosecute a writ of habeas

---

[7]  Concerning a petition for state post-conviction relief, the one-year statute of limitations is tolled during the time period between the state appellate court's decision and the state supreme court's decision concerning the petition, including the period before the timely filing of the notice of appeal. *Evans v. Chavis*, 546 U.S. 189, 192 (2006); *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Matthews v. Abramajtys*, 319 F.3d 780, 787-88 (6th Cir. 2003).

corpus, to inquire into the cause of such imprisonment, restraint, or deprivation.

O.R.C. § 2725.01.  Further, O.R.C. § 2725.05 provides:

> **If it appears that a person alleged to be restrained of his liberty is in the custody of an officer under process issued by a court or magistrate, or by virtue of the judgment or order of a court of record, and that the court or magistrate had jurisdiction to issue the process, render the judgment, or make the order, the writ of habeas corpus shall not be allowed.** If the jurisdiction appears after the writ is allowed, the person shall not be discharged by reason of any informality or defect in the process, judgment, or order.

O.R.C. § 2725.05 (emphasis added).  Therefore, Respondent is correct in asserting that an Ohio habeas petition must be based upon a claim of lack of subject-matter jurisdiction.

In this case, as Respondent contends, Petitioner's state habeas petition was not properly filed because it did not raise a jurisdictional argument.  In *Williams v. Brigano*, 238 F.3d 426 (Table), 2000 WL 1871682, (6th Cir. Dec. 11, 2000), the Sixth Circuit stated that a state habeas petition in Ohio must raise a jurisdictional claim in order to be considered "properly filed."  It is therefore necessary to determine what is necessary for a challenge to be considered jurisdictional under Ohio law.  In Ohio, courts are vested with subject-matter jurisdiction through O.R.C. § 2901.11, which provides:

> (A) A person is subject to criminal prosecution and punishment in this state if any of the following occur:
>
> > (1) The person commits an offense under the laws of this state, any element of which takes place in this state.

O.R.C. § 2901.11.  Further, O.R.C. § 2931.03 provides:

> The court of common pleas has original jurisdiction of all crimes and offenses, except in cases of minor offenses the exclusive jurisdiction of which is vested in courts inferior to the court of common pleas.

O.R.C. § 2931.03.  In Ohio, jurisdiction over a felony case is invoked by the return of a proper indictment before the Grand Jury of the County.  *Click v. Eckle*, 186 N.E.2d 731, 733 (Ohio 1962). The *Click* court held that a petitioner who does not attack the validity of an indictment fails to

-20-

challenge the subject-matter jurisdiction of the court and is not entitled to habeas relief.  In the case

at bar, the Ohio Court of Appeals determined that Petitioner failed to raise a jurisdictional challenge,

and the Supreme Court of Ohio affirmed.  ECF Dkt. #11, Ex. 29, Ex. 32.  A review of Petitioner's

state habeas petition, confirms these holdings.  For example, one portion of the petition stated:

> After finding Mr. Lynch guilty of only one predicate offense upon which a "pattern
> of corrupt activity," as a matter of law, can be based, the trial court lacked jurisdiction
> to find Mr. Lynch guilty of this offense.

ECF Dkt. #11, Ex. 28 at 8. While the argument appears to be framed as a challenge to jurisdiction,

Petitioner failed to address subject-matter jurisdiction (*i.e.*, challenging the locus of the crime or the

lack of a proper indictment). The Supreme Court of Ohio consequently determined that the claim

Petitioner presented was a sufficiency of the evidence argument and did not challenge subject-matter

jurisdiction.  *See* ECF Dkt. #11, Ex. 32.  Accordingly, the undersigned recommends that the Court

find that Petitioner's state habeas petition did not toll the AEDPA statute of limitations.

As with Petitioner's Motion to Vacate Void Forfeiture Judgment, however, Respondent's

argument fails to address any potential tolling effect arising from the appeal Petitioner filed from the

denial of his state habeas petition.  *See* ECF Dkt. #10 at 10-12.  Since Respondent does not meet his

burden by pointing the Court to any authority regarding whether such an appeal tolls the AEDPA

statute of limitations, the undersigned recommends that the Court find that the AEDPA statute of

limitations was tolled for the time that Petitioner's appeal was pending.

Consequently, the undersigned concludes that:

**the AEDPA statute of limitations ran for 132 days, from January 11, 2006** (when
Petitioner's AEDPA statute of limitation began running) **until May 23, 2006** (when
Petitioner filed an appeal from the trial court's denial of his Motion to Vacate Void
Forfeiture Judgment);

**the statute was then tolled until March 1, 2007** (while Petitioner's appeal from his
Motion to Vacate Void Forfeiture Judgment was pending);

**the statute was not tolled by Petitioners state habeas petition** (pending from
December 28, 2006 until January 18, 2007);

**the statute ran for 13 days, from March 2, 2007** (the day after Petitioner's appeal from his Motion to Vacate Void Forfeiture Judgment was denied) **until March 14,** 2007 (the day before Petitioner appealed the denial of his state habeas petition);

**the statute was tolled from March 15, 2007 until July 11, 2007** (when the Supreme Court of Ohio denied the appeal from his state habeas petition); and

**the statute ran for 61 days, from July 12, 2007** (the day after the Supreme Court of Ohio denied the appeal of his state habeas petition) **until September 11, 2007** (when Petitioner filed the instant petition).

The AEDPA statute of limitations did not expire because the statute ran for only 206 days (132 + 13 + 61 = 206). The undersigned, therefore recommends that the Court find the instant petition to be timely and go on to consider Respondent's procedural default argument.

### B.       PROCEDURAL DEFAULT

Respondent next contends that Petitioner's instant claim is procedurally defaulted because he did not raise the claim in the state courts until his post-conviction appeal (*i.e.*, his Motion to Vacate Void Forfeiture Judgment). ECF Dkt. #10 at 12-17. The undersigned agrees that the claim is procedurally barred.

It was not until Petitioner filed an appeal from the trial Court's denial of his Motion to Vacate Void Forfeiture Judgment (post-conviction petition) that Petitioner first claimed that the trial court lacked jurisdiction based upon a lack of predicate offenses. *See* ECF Dkt. #10, Ex. 21. In light of Petitioner's failure to raise this argument at trial or on direct appeal, the Court should consider whether the argument is procedurally barred under the *Maupin* standard discussed above.

First, it is clear that Petitioner failed to comply with a procedural bar – res judicata. As the Ohio Court of Appeals noted, Petitioner failed to comply with res judicata, which "bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was **raised or could have been raised by the defendant at trial, which resulted in that judgment of conviction, or on an appeal from that judgment.**" ECF Dkt. #10, Ex. 23 at 4. A review of the record confirms that Petitioner failed to raise this jurisdictional argument at trial or on direct appeal. Accordingly,

-22-

Petitioner failed to comply with a procedural bar, and the first prong of the *Maupin* standard is satisfied.

The second prong of the *Maupin* standard – whether the state courts actually enforced the state procedural sanction – is also satisfied because the Ohio Court of Appeals denied the appeal based upon res judicata and the Supreme Court of Ohio declined to reach the merits of the petition. *See* ECF Dkt. #10, Ex. 23 at 4; ECF Dkt. #11, Ex. 27.

The third prong of the *Maupin* standard – whether the state procedural bar is an "adequate and independent" state ground on which the state can foreclose federal review – is satisfied here, because as discussed above, a state's res judicata rule barring post-conviction claims which could have been raised on appeal is an adequate and independent ground for *Maupin* purposes. *White*, 431 F.3d at 527; *Mason*, 320 F.3d at 628.

Under the fourth prong of the *Maupin* if the above are met, whether the petitioner has demonstrated "cause" and "prejudice."  Petitioner does not allege either cause or prejudice. Therefore, the undersigned recommends that the Court find the instant claim to be procedurally barred, unless the actual innocence exception applies.

A petitioner who is unable to show cause and prejudice may still obtain habeas review if his case fits within a narrow class of cases permitting review in order to prevent a fundamental miscarriage of justice, as when the petitioner submits new evidence showing that a constitutional violation has probably resulted in a conviction of one who is actually innocent.  *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986).  The Southern District of Ohio has recently summarized the burden for establishing actual innocence:

> The United States Supreme Court has held that if a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway [the AEDPA statute of limitations] and argue the merits of his underlying claims." *Schlup v. Delo*, 513 U.S. 298, 316 (1995).  Thus, the threshold inquiry is whether "new facts raise[ ] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id*. at 317. **To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt."** *Id*. at 327. The Court has noted that

> "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). "**To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence**-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup*, 513 U.S. at 324. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" *Id*. at 321.

*Medina v. Wolfe*, No. 2:06-CV-921, 2007 WL 2323381 at *9, slip op. (S.D. Ohio Aug. 9, 2007) (emphasis added). This Court and other jurisdictions have held that evidence that was available at the time of trial cannot be considered in ruling upon a claim of actual innocence. *See Rickard v. Wolfe*, No. 3:06-CV-2753, 2007 WL 4526522, *slip op*. at *6, *15 (N.D. Ohio Dec. 17, 2007); *Leggett v. U.S.*, Nos. 1:05CV732, 1:92CR233, 2006 WL 3091316, *slip op*. at *2 (N.D. Ohio Oct. 27, 2006); *Hubbard v. Pinchak*, 378 F.3d 333, 340 (3d Cir. 2004); *Osborne v. Purkett*, 411 F.3d 911, 920 (8th Cir.2005) ("Evidence is only new [for actual innocence purposes] if it was not available at trial and could not have been discovered earlier through the exercise of due diligence.") (internal quotations omitted); *Cooper v. Brown*, 510 F.3d 870, 969-70 (9th Cir. 2007).

Here, Petitioner contends that the trial court improperly convicted him of Count 11, engaging in a pattern of corrupt activity. ECF Dkt. #1 at 8-29. Petitioner reasons that the indictment charged him with engaging in a pattern of corrupt activity, with such corrupt activities including but not being limited to the Trafficking in Drugs and Possession of Drug Offenses contained in the indictment, however, the trial judge found him guilty of only one of the charged predicate offenses. ECF Dkt. #10 at 1. Petitioner further argues that a finding of two predicate offenses is necessary for a conviction under Ohio's RICO statute. *Id*. at 10-13. Petitioner does not challenge that the his conviction on Count 1 for possession of cocaine may be used as a predicate offense for RICO charge. *Id*. at 13. Petitioner contends, however, that he was convicted of only one other charge – Possession of Criminal Tools – which does not qualify as a predicate offense under Ohio's RICO statute. *Id*. Petitioner correctly notes that the RICO statute does not include Possession of Criminal Tools (O.R.C. § 2923.24(A)) as an available predicate offense. *See id*.; O.R.C. § 2923.31(I)(2)(a). Petitioner therefore concludes that the trial court did not have jurisdiction to impose a sentence on

-24-

the RICO charge. *Id*. at 14.  Although Petitioner does not articulate his argument as a claim of actual innocence, Respondent raises the issue. ECF Dkt. #10 at 17-19.  So, the undersigned will consider Petitioner's argument as an actual innocence claim.

Respondent contends that Petitioner's argument is based on a misunderstanding of Ohio law. ECF Dkt. #10 at 17.  Respondent contends that O.R.C. § 2923.34(A)(1) does not require a defendant to be convicted of the predicate offenses; it merely requires that the state present sufficient evidence of them. *Id*.

The undersigned agrees that Plaintiff has failed to establish an actual innocence claim, but disagrees with Respondent's analysis.  Respondent is correct in asserting that Ohio law does not require that the defendant be separately charged or separately convicted of the predicate offenses in order for a conviction under Ohio's RICO statute to be valid.  *See State v. Burkitt*, 624 N.E.2d 210 (Ohio 1993) ("The 'two or more incidents of corrupt activity' do not need to be supported by convictions themselves.").  Even though separate convictions for the predicate acts are not required, the finder of fact must find beyond a reasonable doubt that the defendant committed two predicate offenses before finding guilt under the RICO statute.  *See id*.  Therefore, a problem arises in the case at bar from the fact that Petitioner was acquitted of the predicate offenses charged in the indictment. Respondent's analysis is silent on this issue.

Although Count 11 of the indictment states that the predicate offenses "include[] but [are] not limited to" those charged in the indictment, this imprecise language is constitutionally impermissible.  *See* ECF Dkt. #10, Ex. 1 (as to text of the indictment). The Sixth Amendment to the United States Constitution requires that an accused "be informed of the nature and cause of the accusation."  U.S. Const. amend. VI.[8]  A legally sufficient indictment is one that "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must

---

[8] The undersigned notes that challenges to an indictment are cognizable in a federal habeas court only in limited circumstances (*i.e.*, only when it fails to fairly inform the accused of the offense for which he is to be tried).  *Mira v. Marshall*, 806 F.2d 636, 639 (6th Cir. 1986).  The undersigned conducts the analysis of the indictment in this case with the primary purpose of defining the scope of the indictment, not to determine if the indictment was unconstitutional in whole.

defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. U.S.*, 418 U.S. 87, 117(1974). Here, the first prong is established because Count 11 in the indictment clearly identifies the statute under which Petitioner was charged and it recites the language of that statute. *See U.S. v. Hannum*, Case No. 04-4497, 2008 WL 2938663 (6th Cir. Aug. 1, 2008), unreported. The second prong is not satisfied, at least insofar as Respondent theorizes that the trial judge may have convicted Petitioner based on predicate acts not charged in the indictment. The language in the indictment stating that the predicate offenses were not limited to the separately charged drug trafficking and possession offenses is too open-ended to comply with the second prong of the *Hamling* standard because it offers virtually no notice of the date, location, or nature of the charged predicate offenses. *See U.S. v. Redcorn*, 528 F.3d 727, 734 (10th Cir. 2008) ("This sets forth the charged offense in the words of the statute itself, and **contains the date, place, and nature of the charged illegal activity**. It is thus entirely sufficient to give the defendants fair notice and enable them to determine whether to raise a double jeopardy defense.") (emphasis added); *Monsanto v. U.S.*, 143 F.Supp.2d 273, n.3 (S.D.N.Y. 2001) (holding that and indictment "an indictment need do little more than to track the language of the statute charged **and state the time and place (in approximate terms) of the alleged crime**.") (emphasis added) quoting *U.S. v. Alfonso*, 143 F.3d 772, 776 (2d Cir.1998).

Here, the State amended the indictment such that Counts 4, 5, and 6 were identical (charging trafficking of 1,000 grams of cocaine between June 13, 2002 and July 23, 2002) and Counts 7, 8, and 9 were identical (charging possession of 1,000 grams of cocaine between June 13, 2002 and July 23, 2002). The State then dismissed Counts 5, 6, 8, and 9 – the undersigned surmises that these counts were dismissed because they were identical to Counts 4 and 7. As Petitioner contends, the trial court was restricted to considering only the drug trafficking and possession charges in the indictment when considering potential predicate offenses under Count 11, as those charged offenses were the only ones sufficiently identified in Count 11. *See* ECF Dkt. #1 at 14 ("Absent any finding of guilt to the permissible offenses set forth in the indictment, the court could only have based its findings upon the impermissible possession of criminal tools offense."). Accordingly, in identifying the predicate

-26-

offenses for Count 11 as "includ[ing] but is not limited to the Trafficking in Drugs and Possession of Drug Offenses contained in this indictment," the indictment essentially limited the potential predicate offenses to those charged on Counts 1, 2, 4, and 7.  When the trial judge found Petitioner guilty of only Count 1 and acquitted him on Counts 2, 4, and 7, the basis for a guilty conviction for engaging in a pattern of corrupt activity was invalidated.[9]  In short, Respondent's argument should be rejected due to the potential due process concerns surrounding a RICO charge where the predicate offenses are not sufficiently identified in the indictment.  In short, Petitioner's conviction should not have been based upon predicate offenses not identified in the indictment as a separate Trafficking or Possession offense.

Nevertheless, the undersigned recommends that the Court find that Petitioner has failed to establish actual innocence because his claim is not based upon new evidence.  In *Schlup*, the U.S. Supreme Court stated  that "Without any **new evidence** of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim."  *Schulp*, 513 U.S. at 316 (emphasis added); for the proposition that an actual innocence claim must be based on newly discovered evidence, *see also Rickard*, 2007 WL 4526522,at *6, *15; *Leggett*, 2006 WL 3091316, at *2; *Hubbard*, 378 F.3d at 340;  *Osborne,* 411 F.3d at 920 ("Evidence is only new [for actual innocence purposes] if it was not available at trial and could not have been discovered earlier through the exercise of due diligence."); *Cooper*, 510 F.3d at 969-70 .  Accordingly, even if Petitioner states a valid constitutional claim regarding an error at trial, his failure to adhere to the AEDPA statute of limitations should not be excused, as his attempt at establishing actual innocence is based upon evidence that existed throughout the course of his case following the trial court's conviction.

---

[9]  Although Respondent does not identify or speculate as to the second predicate offense upon which Petitioner's RICO conviction was based, the undersigned notes that the trial court's acquittal on Counts 4 and 9 should be interpreted as meaning the state failed to prove beyond a reasonable doubt that Petitioner trafficked or possessed over 1,000 grams of cocaine at any time between June 13, 2002 and July 23.  Accordingly, the trial court's acquittal on Counts 4 and 7 precluded the use of the dismissed Counts (5, 6, 8, and 9) as predicate counts for Count 11 because those counts charged the same conduct during the same dates as the offenses for which Petitioner was acquitted.  If the judge did in fact use of the dismissed counts as a basis for the RICO offense, then he violated the due process notice requirements and rendered a factually inconsistent verdict.

Of note, a more stringent standard of actual innocence, known as a freestanding actual innocence claim, was established in *Herrera v. Collins*, 506 U.S. 390 (1993).  However, a court's conclusion above that a petitioner does not meet the lesser "actual innocence" standard under *Schlup v. Delo* also resolves a freestanding claim under the more stringent actual innocence standard of *Herrera*.  *Settles v. Brooks*, Case No. 07-812, 2008 WL 2988123 at *14 (W.D.Pa. July 31, 2008) citing *Schlup v. Delo*, 513 U.S. at 316-317; *Thomas v. Taylor*, 170 F.3d 466, 473 (4th Cir.1999) ("Regardless of whether we apply the more lenient standard of *Schlup* or the stricter standard of *Herrera* ..."); *Sistrunk v. Armenakis*, 292 F.3d 669 (9th Cir.2002) (referencing the "more stringent *Herrera* standard").

## VI.    CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the Court find the instant petition to be procedurally defaulted and that the Court DISMISS the instant petition, in its entirety, with prejudice.

Date: November 26, 2008                              */s/George J. Limbert*
                                                    GEORGE J. LIMBERT
                                                    UNITED STATES MAGISTRATE JUDGE

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of service of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

-28-